## PHILADELPHIA STORAGE BATTERY CO. v. ZENITH RADIO CORPORATION.

### No. 7341.

Circuit Court of Appeals, Seventh Circuit.

Jan. 14, 1941.

Rehearing Denied Feb. 27, 1941.

Milton T. Miller, Geo. L. Wilkinson, and Howard W. Hodgkins, all of Chicago, Ill., for appellant.

John A. Dienner, of Chicago, Ill., and Dexter N. Shaw and Chas. H. Howson, both of Philadelphia, Pa., for appellee.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This action was instituted by appellee against appellant under Revised Statutes, section 4915, 35 U.S.C.A. § 63.[1] It sought the issuance of a patent on an application filed by one Jacke and assigned to appellee. The defendant denied the plaintiff's right to this relief on the ground that defendant owned a patent, No. 1,638,734, covering the same device issued to Heath the first inventor, who assigned it to defendant, who also owned Heath reissue patent, No. 17,531. The District Court entered a judgment in favor of the plaintiff holding that Jacke was the original, first and sole in-

[1] "Whenever a patent on application is refused by the Board of Appeals or whenever any applicant is dissatisfied with the decison of the board of interference examiners, the. applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention. as specified in his claim or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. * * *"

ventor of the invention in issue, and that plaintiff was entitled to receive a patent for the invention. From this decision the defendant has appealed.

There is no question either of infringement or validity presented in this appeal. The sole question is the right of priority of invention, arising out of the facts elicited in a series of interference proceedings to which the Heath reissue patent was subjected.

The original Heath patent No. 1,638,-734, containing 12 claims, was issued August 9, 1927, on an application filed November 13, 1924. Jacke filed his application for a patent on November 20, 1928. It contained 12 claims. On February 23, 1929, Heath filed his application for a reissue of his original patent, and it was reissued with 55 claims on December 17, 1929, with the effective date of November 13, 1924. On February 3, 1930, Jacke added to his application claims 22 to 35, inclusive.

On May 24, 1930, the Examiner declared a two-party interference, No. 59,-991, between Jacke and Heath, containing 14 counts. They correspond to the claims which Jacke had added to his application on February 3, 1930, and they also correspond to claims 28 to 37, inclusive, and 50, 51, 52 and 54 of Heath's reissue patent. On July 27, 1930, Heath filed his preliminary statement before the Examiner of Interferences. Jacke took testimony, and Heath did not, because it was conceded that his record date was that of his original application.

In 1931 a second two-party interference, No. 65,590, was declared by the Examiner between Jacke and Heath. On June 23, 1931, the Patent Office dissolved Interference No. 59,991 as to counts 1, 2, 3, 4, 5, 6, 9 and 10, and on February 2, 1933, it dissolved count 8. On the same day the Patent Office declared Interference No. 59,991 to include an application of Edgar M. Butler, and the issue of that interference then comprised counts 7, 11, 12, 13 and 14.

On October 20, 1936, there was a final hearing in Interference No. 65,590. Jacke submitted the testimony theretofore taken in Interference No. 59,991. Heath offered none. On November 3, 1936, the Examiner of Interferences rendered his decision in which he awarded priority of invention of the subject matter in issue to

Jacke. He therein stated, among other things:

"Having filed his application prior to the issuance of the Heath reissue patent and because the original Heath patent contained no interfering claims, * * * Jacke has the burden of proving his case by a preponderance of the evidence. * * * Jacke has taken testimony. * * * Heath has taken no testimony and is therefore confined to his record date of November 13, 1924. * * *

"Having established a reduction to practice prior to the record date of * * * Heath, * * * Jacke is entitled to an award of priority."

No appeal was taken.

On May 17, 1937, Jacke filed his motion for judgment against Heath in Interference No. 59,991, on the theory of res adjudicata by virtue of the Examiner's decision in Interference No. 65,590. A hearing on Interference No. 59,991 was had the next day following, before the same Examiner who had rendered the decision in No. 65,590. On September 15, 1937, he rendered his decision in which he denied Jacke's motion for judgment and awarded priority of invention of the subject matter in issue to Heath. Among other things he therein stated: "* * * Butler being a junior party and having taken no testimony is not entitled to prevail herein."

"* * * Jacke has moved for judgment against Heath on the grounds of res adjudicata. For the reasons as more fully discussed in the decision in Interference No. 61,976, Jacke vs. Rice vs. Heath, rendered concurrently herewith the motion for judgment is denied."

On the question of res adjudicata the same Examiner in Interference No. 61,-976, Jacke v. Rice v. Heath, said:

"* * * Jacke has moved for judgment against Heath on the ground of res adjudicata.

"* * * (They) were involved in Interference No. 65,590 on subject matter similar to but more specific than the subject matter herein. Interference 65,590 became separated from the companion interferences, of which the present case is one of a series, and was decided in favor of Jacke. * * * Heath did not appeal and the decision therefore became final as far as the Office is concerned.

"* * * Jacke in support of his motion has cited numerous decisions but none of them apply to interferences which are copending in the Office and no reason is seen for extending the doctrine of res adjudicata and unduly penalizing a party because a series of companion interferences became separated in the Office and were not heard together as they would be in the ordinary course of events."

On appeal to the Board this ruling was approved.

■ The difficulty here lies not in any disagreement as to the essential elements of res adjudicata. They are conceded. The question is whether that doctrine is to be applied in a series of companion or concurrent interferences, so that the finding by the Examiner in one interference, of a fact necessary to, but not determinative of, the issuance of a patent, will preclude the denial of the fact so found, by any party to such other interference proceedings. It is quite true that Jacke and Heath were parties to all interferences, and their right of priority was at issue in each. Butler also was a party to Interference No. 59,991, but he was not a party to No. 65,590, and could not be. True, he submitted no evidence in No. 59,991, and the finding was against him, but he was not bound, and could not be, by the finding in No. 65,590. Hence the Examiner properly required Jacke to submit his evidence on priority.

■ Of course the issue between Jacke and Heath was the same in both contests, and for this reason appellee urges that the doctrine of res adjudicata should apply as against Heath. We think the doctrine should not be extended so far. It has never been so applied by the department, and the precise question seems never to have been raised before. To so hold would seem to us to be unreasonable, and would interfere greatly with the expeditious transaction of the department's work. This, we think, is well illustrated by the events that transpired here. The record discloses that in Interference No. 65,590, Heath filed no brief and did not participate in argument, but both did with respect to the last interference. The Examiner calls attention to this fact and states that after considering appellant's argument and briefs and the evidence, he was thoroughly convinced that Heath was entitled to priority. We think this statement is not at all unreasonable. It comports thoroughly with our experience.

While separate interference proceedings may be and are tried separately, as in this case, yet they all constitute a part of one proceeding, which in its finality is to determine whether there has been invention, and who is entitled to the patent. The statute prescribes the terms and conditions upon which a patent shall issue. The diversity of those requirements at times demands a consideration by separate bodies or individuals of the department. The method of handling these questions is left largely to the patent office, and we think it would be quite unfair to interfere with the orderly processes and customs which they have established and which they now strongly advise, as shown by their decisions in this case. We know of no sound reason why an Examiner should not be permitted to change his conclusion as to the facts at any time before the patent issues. We hold that the doctrine of res adjudicata does not apply in this case.

■ Appellee further contends that it is entitled to an award of priority on the evidence submitted in Interference No. 59,991, and the District Court so held. With this conclusion we cannot agree. The Examiner in his finding said:

"For the same reasons as fully set forth in the decisions in Interference No. 61,976, Jacke v. Rice v. Heath, and Interference No. 61,975, Jacke v. Heath v. Trenor, rendered concurrently herewith Jacke, while held to have conceived prior to the record date of * * * Heath, is held to be the last to reduce to practice and was lacking in diligence from just prior to Heath's entry into the field until Jacke's later reduction to practice."

This decision was affirmed by the Board.

In Interference No. 61,975, referred to in the last paragraph above, the Examiner said:

"Jacke, therefore is held to have established conception of the invention at least as early as August 22, 1922.

"The main question in this case is whether what was done by Jacke in 1922 and 1923 constitutes a reduction to practice of the invention in issue.

"All that Jacke ever did with either the mechanical 1922 device or the electrified 1923 device was to connect a radio dial thereto and operate the push buttons

noting that the shaft of the apparatus stopped at a definite point each time a selected push button was actuated.

"The witnesses who saw these devices all allege that they knew that the devices were to be used to tune a radio receiver and that they noted that the shaft of the device always stopped at the same point.

"The counts all include an adjustable controlling element of a radio receiving system as part of the combination claimed and the question to be decided is whether the early work of Jacke, stopping as he did just a step from complete testing of the device constitutes such a demonstration of the practicability of the device as to constitute a reduction to practice.

"Certainly, if Jacke had connected his device to the tuning element of a radio receiver and had been able to tune in various stations successfully by manipulation of the push buttons there would be no question of reduction to practice. Jacke did not do this however but instead stopped just short of this ultimate and final test and never connected his tuning apparatus to a tuning element either in or out of a radio receiver circuit.

"Many decisions have been cited on both sides of this question including a citation by Jacke of the decisions in Interference No. 65,590 in which * * * Jacke was awarded priority * * * as early as November 1923.

"In these cases, however, Jacke was unopposed and no briefs or final arguments were heard by parties adverse to Jacke.

"In the present case the record by Jacke differs to some extent from the record submitted in the prior interferences and the Office has had the benefit of both the briefs and oral arguments of opposing parties.

"This question must therefore be decided de novo without regard to the decisions in the prior interferences since to hold otherwise would deprive the opposing parties of their rights of original jurisdiction before the examiner of interferences.

"What amounts to a reduction to practice of a machine as contra-distinguished from an unsatisfactory and abandoned experiment depends chiefly upon the special circumstances of each case in which it is sought to be established and no hard and fast rule can be laid down in one case to govern all others. Complete invention must amount to a demonstration. It must be shown to have passed the region of experiment, and possible or probable failure, and to have arrived at certainty by being embodied in a form intended, capable of producing the desired result.

"In the present instance the party Jacke stopped short of a complete and final demonstration of his device. The 1922 and 1923 devices were never connected to a radio set except for two short tests concerning which there is only Jacke's uncorroborated testimony.

"Coupled with this lack of complete and final demonstration is the fact that Jacke purportedly spent all his time on automatic tuning means for radio receivers from 1922 to 1928 and yet in spite of all the devices he supposedly built not one was used to tune a radio until the final device was made in 1928. * * *

"This failure to take the one small step which would complete the device while at the same time long periods were spent in experimenting with other devices some of which were entirely outside the issue herein can lead to no other conclusion than that Jacke's 1922 and 1923 devices were no more than abandoned experiments."

An examination of this record convinces us that the Examiner's statement in these respects is abundantly supported by the evidence, and we approve his decision, and that of the Board.

The decree of the District Court authorizes and directs the Commissioner of Patents to issue letters patent to the plaintiff as assignee of Jacke, upon its filing with the patent office a copy of that court's adjudication, and otherwise complying with the requirements of the law. We do not understand that section 4915 of the Revised Statutes contemplates that the court shall direct the Commissioner to issue a patent. This must be true because there are other matters which the department must decide favorably to Jacke's assignee before a patent can issue to it. The statute which authorizes the issuance of patents must be complied with in every respect, and we have no power under section 4915 to restrict those requirements.

We agree with the findings of the Examiner and the Board. The decree is reversed and the cause is remanded with directions to dismiss the complaint.