### BLOOM v. LOCKE et al.*
#### Patent Appeals Nos. 3233, 3234.

Court of Customs and Patent Appeals.

March 5, 1934.

H. H. Benjamin, of Washington, D. .C. (Morris Hirsch and Harry Price, both of New York City, of counsel), for appellant.

Elwood Hansmann, of Chicago, Ill., for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The record now before us comprises the proceedings in two interference proceedings, numbered, respectively, 56,841 and 60,199, instituted and decided by the tribunals of the United States Patent Office and now brought to this court on appeal·by Bloom, the appellant in both cases.

On May 19, 1922, Bloom presented his application to the Patent Office for a patent upon apparatus for chassis lubrication, which went to patent on June 14, 1927.

On July 31, 1925, the appellees, Sylvanus D. Locke and Charles R. Dosch, filed their joint application for patent on a similar invention. On May 16, 1928, an interference, No. 56,841, was declared by the office between said application and the Bloom patent, which interference was redeclared on October 4, 1929, to include a reissue application of Frederick H. Gleason, which application was filed December 5, 1928, on patent No. 1,629,453, granted May 17, 1927.

As reformed, the interference included the following counts:

"1. A central chassis lubricating installation including a pipe line having an inlet closed against venting and having branches with outlets feeding the bearings and connected in multiple, means closing said branches against venting, said anti-venting means including fittings normally open to the pipe line from which they are supplied and having orifices therein of dimensions so small as to prevent concurrent flow of lubricant and air therethrough in opposite directions, said orifices adapted to emit lubricant therethrough consequent upon forcing small charges of lubricant into the head of the pipe line, until equilibrium in the system is restored.

"2. A central chassis lubricating installation including a pipe line having outlets mounted near the bearings and connected in multiple, a pump connected to the inlet of the piping system, means closing said inlet against venting, means closing said outlets against venting, said latter anti-venting means including fittings at the bearing ends of the branches normally open to the pipe line from which they are supplied and having orifices therein of dimensions so small as to prevent the concurrent flow of lubricant from the branches, and air therethrough in opposite directions, said orifices adapted to emit lubricant therethrough consequent upon forcing of small charges of lubricant from the pump into the head of the pipe line, until equilibrium in the system is restored."

The original declaration of interference included count 1 only, which was copied from Bloom's patent claim No. 7. The party Bloom moved to dissolve the interference as to this count, claiming that Locke and Dosch could not make the count. This motion was denied by the Law Examiner. Upon the redeclaration of the interference to include the Gleason reissue application, counts 2 and 3 were added to the interference; these being claims 8 and 1, respectively, of the Bloom patent. Said count 3 will be hereinafter quoted.

The matter was submitted upon the preliminary statements, and upon an earlier application of Locke and Dosch, serial No. 411,533, filed September 20, 1920.

Each of the parties filed a preliminary statement. After the filing of these, each of the parties Locke and Dosch, and Bloom filed a motion to dissolve as to Gleason. This motion was allowed by the Law Examiner as to count 3, and denied as to counts 1 and 2. No further action was taken by Gleason as to said dissolution and it became final. Thereafter, on August 5, 1930, a new interference was declared between the parties Locke and Dosch, and Bloom upon the subject-matter of said count 3, which interference is No. 60,199, the second one involved herein. Said count 3, renumbered as count 1, is as follows: "1. In a motor vehicle, in com-

bination, chassis bearings, an installation for supplying lubricant to said bearings, said installation including a force pump having a fixed cylinder delivering at a level higher than said bearings, a piping system normally maintained partly filled with oil and supplied from said pump intermittently with small charges of oil and having outlet branches leading to various bearings, a device in each of said branches to limit the flow therethrough, said branches normally oil-sealed to prevent the entry of air in reverse direction therethrough, said piping system being also closed from the external air ahead of said branches, so that the branches will emit oil to the bearings after pump operation, until the state of equilibrium of the pipe contents is restored."

The parties have, by stipulation, consolidated the records and cases for the purposes of this appeal, and they will be so considered.

The issues in interference No. 56,841 will be first considered. When this matter came on to be heard on the preliminary statements and on the earlier application of Locke and Dosch, Locke and Dosch moved to shift the burden of proof. This motion was denied by the Examiner of Interferences, without prejudice, on the ground that the counts of the interference did not read upon the earlier application of Locke and Dosch.

The matter having been presented to the Examiner of Interferences, the issue being, as stated by that tribunal, "The sole issue presented for decision at this time is whether or not an earlier application of Locke and Dosch, Serial No. 411,533, filed September 20, 1920, supports the counts," it was held that it did not so support them. Priority, therefore, was awarded, on the record, to the party Gleason.

On appeal, the Board of Appeals decided that said application 411,533 would support the counts, reversed the decision of the Examiner of Interferences, and awarded priority to Locke and Dosch. The party Gleason has accepted the adverse decision as to him, and has not appealed.

The tribunals in the Patent Office seem to have varying views as to whether the counts of this interference read upon the earlier or parent application of the party Locke and Dosch. A brief description of the disclosure of Bloom, from whose patent the counts were taken, seems necessary. Bloom shows a central lubricating system for automobiles, including a manually operated force pump mounted in the dash. This forces lu-

bricant into a pipe line, through which it is conducted to the various parts of the chassis where lubrication is needed. A spring and ball valve prevents return of the lubricant into the reservoir. Branches lead from the pipe line to the various points of lubrication. These branches have fittings attached to their outlets, which fittings are open to the pipe line, and each of which has a single very small opening in the center thereof, which opening extends through the fittings to the bearing, and which opening is so sized that, as lubricant flows outward through it, air cannot enter it. The lubricant pressure in the pipe line caused by impulses of the pump is gradually relieved by the outward flow of the lubricant through these small openings in the said fittings, until equilibrium in the pipe line is restored.

The Locke and Dosch disclosure shows a lubricating system operating on a somewhat different plan. Oil from the crank case lubrication is used. This oil is taken from the oil pump which is located in the bottom of the crank case, and conducted upward through a pipe to a distributing device. Here, by means of proper gearing, a disk having apertures therein is slowly revolved, and at certain points the apertures will come in register with openings in small pipes which conduct oil to pipe lines, which lines extend to the various portions of the chassis where lubrication is required. As a hole in said disk registers with the opening into one of said pipes, a quantity of oil enters the pipe, after which the disk revolves and closes the opening. This oil is conducted downward through the pipe to a point where the pipe is connected with another pipe of like size, by means of a T. The latter pipe extends longitudinally of the chassis and, at points where lubrication is required, another branch pipe, connected with the main horizontal pipe by a T, extends to the point of lubrication. At the point where the bearing is to be lubricated, a piece of cotton wicking is inserted in the outlet of this pipe, which wicking is kept in contact with the bearing, and through which oil seeps and is conducted to the bearing. The disclosure also shows, as an alternative device, between the last named T and this outlet portion, a measuring valve which is fitted with threads for attachment to the outlet, and to the opposite portion of this short section of pipe which supplies this particular bearing with oil.

As shown by Figures 12 and 13 of the Locke and Dosch drawings, after oil from the pipe line is forced into this measuring valve,

the valve, by means of a spiral spring, is closed toward the pipe line end. Thereafter, the oil, which is trapped within the valve, may percolate through the wick to the bearing, or will be forced into the bearing when another. impulse from the pipe line again fills the measuring valve.

The principal controversy in the case centers around the language in count 1, which is as follows, and which is illustrative of the language in count 2: "Means closing said branches against venting, said anti-venting means including fittings normally open to the pipe line from which they are supplied and having orifices therein of dimensions so small as to prevent concurrent flow of lubricant and air therethrough in opposite directions." The Examiner of Interferences thinks that this language does not read upon the Locke and Dosch disclosure, and the board is of the opposite opinion. This language, it must be conceded, when read upon the Bloom disclosure, has a definite and easily understood. meaning. There need be no misunderstanding as to what the language means, when read in that connection. Bloom shows fittings which are attachable to the branches of his pipe line, and which are normally open thereto. In his Figures 2 and 3, as a part of the said fittings, there appears a small metal part with a smll opening through it in the middle. On the contrary, Locke and Dosch must supply this feature, if at all, by that portion of the outlet pipe which comes in contact with the bearing, and the orifices which are named must be constituted by the piece of wicking. A "fitting" is thus defined by Webster's New International Dictionary (1932): "Anything used in fitting up; esp., *pl.*, necessary fixtures or apparatus; auxiliary parts, as of a boiler, or the small separately made parts of a machine; the *fittings* of a room; gas *fittings;* bicycle *fittings*."

Lockwood's Dictionary of Mechanical Engineering Terms (Horner) thus defines the word: "Commonly applied to the essential parts or adjuncts of an engine, or boiler, or machine. Specially applied· to boiler fittings."

These definitions clearly include the Bloom parts in question. However, it is a considerable stretch of these definitions to say that they would also include a piece of wicking pushed or crowded into the end of a section of pipe.

The word "orifice" is thus defined by Webster: "A mouth or aperture, as of a tube, pipe, etc.; an opening * * *."

It is difficult to discern wherein the interstices which may be present in a piece of fabric may be called an orifice or orifices. On the contrary, such a device is more to be likened to an obstruction than it is to one having orifices therein. The various threads or filaments composing the fabric, of course, lie over and about each other, and any lubricant that enters and passes through the plug of Locke and Dosch must do so by a system of percolation through and about and among the fibers of the material.

In our opinion, the wick disclosed by Locke and Dosch in their primary device is not a fitting normally open to the pipe line and having orifices therein as described in the counts. If the alternative device having a measuring valve is to be relied upon by Locke and Dosch, this equally fails to support the counts. When this valve is used, the "fittings" are not "normally open to the pipe line," because of the valve part 73 which normally closes the inlet from the pipe line.

While the counts should be liberally construed, we agree with the Examiner of Interferences that we should not depart from the ordinary meaning of the words used to carry out such construction, and we are further of the opinion that if there is any ambiguity about the matter, the count should be read in the light of the disclosure of the patent from which it was taken. Both counts 1 and 2 contain, substantially, this language which, in our opinion, does not read upon the Locke and Dosch disclosure.

There is some difference of opinion, also, as to whether Locke and Dosch disclose a pipe line, branches, and outlets as required by the counts, and upon this question Locke and Dosch have, during these interference proceedings, taken varying positions. Some question, also, arises as to whether the Locke and Dosch outlets may be said to be connected "in multiple." In view of our conclusion as to the points hereinbefore reviewed, it will not be necessary for us to discuss these latter named controversial points.

As to the single count of interference No. 60,199, the only question arising thereon is whether the application in the earlier Locke and Dosch, serial No. 411,533, has a sufficient disclosure to support the count. If it does, Locke and Dosch should be given priority, as the filing date of said application is earlier than any date to which the party Bloom is entitled. The Examiner of Interferences calls attention to the fact, in his decision, that when Locke and Dosch made their

original motion to shift the proof, the party Bloom, in the briefing thereof, conceded that the earlier Locke and Dosch application would support count 3. The record does not show that there was any contest as to that point in the earlier proceedings in the case. Considering this fact, in connection with what the Examiner of Interferences thought to be the disclosure of this earlier Locke and Dosch application, he awarded priority of invention to Locke and Dosch.

The principal contention as to this point revolves about the language in the single count of the interference, namely, "a force pump having a fixed cylinder delivering at a level higher than said bearings." The party Bloom contends that he discloses a reciprocating pump having a fixed cylinder, and that he also plainly discloses that this pump delivers at a level higher than the bearings to be lubricated. There can be no doubt about this disclosure. It is not only shown by Bloom's drawings, but is disclosed by his specification, wherein the location of the pump compared with the bearings is described and relied upon.

The Board of Appeals took the same view of the matter as did the Examiner of Interferences, adding, however, that "in our opinion the real invention involved in the count is not affected by the employment of a pump having a cylinder." In addition, the board said: "In fact if the casing of the Locke Pump is circular we think the count is met in terms by such a construction." However, the Board of Appeals does not state that the disclosure of Locke and Dosch shows such a circular casing.

It seems to be the opinion of the two Patent Office tribunals that the specification of Locke and Dosch shows a rotary pump, and from this it is deduced that the pump must be contained within a cylinder, as, it is said, all rotary pumps are so constructed. Again it is held by both tribunals that the point of delivery of the Locke and Dosch distributor is at a level higher than the bearings. Counsel for Bloom insist that the Locke and Dosch disclosure does not show this to be necessarily so.

In the Locke and Dosch drawings, Figure 1, the engine is shown in an elevated position above the bearings, so that the whole of the device may be fully disclosed. Two points of distribution from the crank case pump are shown—one in the distributor hereinbefore discussed, and the other at a lower point where the distribution of oil for crank case

bearings is made. If the engine be lowered to its proper place where the center of the crank shaft will be just above the front axle, as is stated in the specification, it cannot be certainly determined by us that the distributor outlet of the system will not be above all the bearings to be lubricated.

There is necessarily much uncertainty in the mind of the court about the sufficiency of the disclosure of Locke and Dosch in respect to the matters above referred to. We are loath to disturb the concurring decisions of the tribunals of the Patent Office in this respect, in view of such uncertainty. Both the tribunals below were of the opinion that the disclosure was sufficient, and, while it may and does appear that there is much question about this, we do not feel that we are so convinced of the error of the decisions of the concurring tribunals below that we should set them aside.

■ The appellant has raised an additional question, namely, that the party Locke and Dosch added the claim which constitutes the count of this interference more than two years after the subject-matter of this count was disclosed in a publication, a copy of which publication appears in the record, and appears to be a page from Automotive Industries, of May 18, 1922. The Board of Appeals refused to consider this matter on the grounds that it was not raised before the Examiner of Interferences, and was not a matter affecting priority or any question ancillary thereto. We agree with the Board of Appeals in this conclusion. Irrespective of the question whether it should have been first raised before the Examiner of Interferences, in our opinion it is a matter having to do only with patentability, and we will not go into that issue here. Gowen v. Hendry, 37 F.(2d) 426, 17 C. C. P. A. 789. This is not a similar case to Sundstrand v. Gubelmann, 55 App. D. C. 200, 4 F.(2d) 166. In that case the counts were not copied until over two years had elapsed after patent had issued.

We therefore conclude that there was error in awarding priority to the party Locke and Dosch upon counts 1 and 2 of interference No. 56,841, and the decision of the Board of Appeals is reversed therein and priority will be awarded to the party Bloom. The decision of the Board of Appeals as to count 1 of interference No. 60,199 is affirmed.

Certain additional matters were added to the record as the result of certiorari issued in response to suggestions of diminution of

118

the record, made by both parties hereto. Some of these matters are deemed essential to the record, and some are of a more doubtful character. It is thought proper that each party pay one-half the costs occasioned by the insertion in the transcript of this additional matter, and this will be the order.